Judge Underwood,
delivered the opinion of the court.
Lewis Sanders being largely indebted to the New York manufacturing company, replevied their judgment, with John Fowler as surety. With «i view to obtain indulgence, he made an arrangement with T. T. Crittenden, the attorney and agent for the company, in which the latter agreed to accept cash notes, payable in twelve months, in discharge of the debt. Sanders then applied to his friends,and induced sense ten or more to lend him their notes, pay aide In twelve months, to enable him to settle the debt due the company, and to comply wiih the arrangement agreed on with their attorney. Among the notes executed fey tlie friends ©f Sanders, was one given fey the plaintiffs in error, for $500, and which, by assignment, fell into the hands of J aeofe Holdermaa wfe® saed thereon and obtained judgment»
*472 Barry and Schatzell then filed their bill, enjoining the judgment, upon the ground, that Sanders and Fowler, to induce the complainants to lend their note for .$500. proposed to execute a lien on a number of valuable English rattle, the property of Sanders,subjecting them to sale before the complainants should be called on: that a deed of trust was accordingly executed to Fowler, as trustee, conveying the cattle to him, with power to sell, Sic. that the complainants were to have no trouble with (lie cattle, but Fowler was to manage the whole matter; that in the course of the year, after the deed of trust was executed, Fowler should sell the cattle and apply the proceeds; that since,the judgment, the complainants discovered that the deed of trust had not been recorded, and that the trust property had been so mismanaged that the greater part, if. not the whole, of the cattle would be lost; that the cattle had been applied to other objects, in violation of the trust; and that after Sanders and Fowler had violated their contract, the said note (being left with Sanders with Fowlers name endorsed, to whom the note was made payable, by the agreement between the parties) was transfered without the knowledge, approbation or authority of the complainants. by Sanders to James Morrison, who assigned it to Holdcrman. Whereupon the bill prayed that the court would enjoin, &c.
By an amendatory bill, the complainants charge, that after Fowler had accepted the trust and failed to have the deed recorded as already stated, and after the time for recording had expired, he arid Sanders, under color of the deed of trust, proceeded to sell a large number of the cattle at public auction: that they received a considerable-amount on account of the sales, and mis-applied the funds; that some of the cattle were bought in for Sanders, who paid nothing for them; that Sanders made a fraudulent mortgage to his brother, of the cattle so purchased, and after-wards made a colorable mortgage of the same cattle, without the knowledge of the complainants, pretend-edly, for the security of the complainants and others; that these mortgages were recorded in due time, but the mortgage in behaifof the complainants was of no value, because of prior incumbrances; and that the ■neglect, fraud and mismanagement of Sanders and *473 fowler happened whilst the ‡500 note was yet in their hands undisposed of, &c.
Sanders, Fowler, Morrison and Holderman were made defendants. The two last having died, their representatives were made parties in their stead.— The answers of Morrison and Holderman deny any knowledge of the consideration upon which the note was executed, and require proof of ali material alie» gations in the bill.
Fowler denies that he ever made the complainants any promises about the cattle: says that he never had any conversation with them on the subject, before the execution of the note, nor before the note was presented to him for endorsement: denies that he mismanaged the deed of trust, and says he never saw any such deed.
Sanders admits, in his answer, that he borrowed the note of the complainants to enable him to settle the debt to the New York manufacturing company, and to induce them to give it, promised them a mortgage or deed of trust on thirty-three head of English cattle. With the understanding that such a lien was to be given on the cattle, Sanders says, the complainants executed their note to Fowler who endorsed it in blank, and thereafter, Sanders exchanged it and other notes with Morrison for two notes on John and Thomas P. Hart; which two notes he paid to the agent of the aforesaid company. Sanders also states that sixteen head of the cattle were sold under the direction of Fowler, as trustee, and that there was a partial distribution of the money collected, among the. persons who had loaned their notes to him, from which source Barry (he thinks) received $80. The remaining seventeen cattle were delivered to Walker Sanders, at the request of Schatzell and others, who had loaned their notes. Sanders likewise states, that he executed a mortgage on all the cattle, to confirm the deed of trust, after it was ascertained not to have been recorded in time, which mortgage was duly recorded.
Two questions arise upon the facts set forth in the bill and answers and proofs.
1st. Was the transfer of the note to Morrison such *474 a violation of the agreement, upon which it was exe* cute 1, as to destroy the obligation on the part of the complainants, and give them a right to relief against it in a court of equity?
2nd. Has Fowler, the trustee and obligee in conjunction with Sanders, so mismanaged the tru-t, as to absolve the complainants from liability on their note?
Before deciding these questions, there is a preliminary point to be disposed of. it is, was Sanders, whose deposition was taken, and objected to by the plaintiffs in error, a competent witness? it is perfectly clear, that Sanders would be liable to the complainants now plaintiffs in error, for any sum which they might be compelled to pay upon the note, and which was not reimbursed by (ho properly conveyed in truR. Bnt we do not perceive the groan cl of any liability by Sanders to Morrison. If Sander^ had superscribed ‘ an as-igument to iiirn-'eR, over Fon ler’s endorsement, and thereafter assigned the taste to Morrison, there might have been a Inhililv upon Sait* tiers as assignor; hut if she note was transferred to Morrison with Fowler’s endorsement and without any assignment hv Sanders, then he was not liable; see Mirkley vs. Withers, IV. Mon. 14; Butler vs. Suddath, VI. Mon. 542. [tdaes not appear in the record, that Sanders assigned to Morrison. Sanders was, therefore, a competent witness.
Upon the first question raised, we are of opinion that the obligation of the note was not destroyed by the transfer to Morrison. There is no allegation in the bill, whichcan.be understood as averring dial it was a part of the contract between the parties, that the note should be disposed of,’only by transferring it to (he New York manufacturing company, or to their agent, Crittenden, arid that it should he void, unless so disposed of. The. deposition of Johnson leads to that conclusion, hut from a survey of the allegations, and the whole evidence, we regard the transaction as a loan of credit, to enable Sanders to settle a pressing demand, and that the note was executed with a view of being thrown into inaiket for that purpose. Thus the note had its full effect in accomplishing the purpose for which it was executed, for.it is proved that the notes which Sanders got in exchange went to pay the said company'.
js’ £ pXecute ailerti of trust on prop-induces B to execute his _ “°ljjew^rown jnt„ market sold to 6ettl® a de-ie pressing A, nbnsraf tr1urst,’0t|>”|t*ie ^u5(ee ¡n‘ the d, ml of trust, wil1 entitle B ihe* ',mte in the hands of an
Higgin and Monroe,)for plaintiffs; Widcliffe and Woolley, for defendants.
Upon the second question, we are of opinion, that no abuse of the tru«t, on the part of Fowler,as trustee, or on the part of S toilers, can have the effect of do-straying the valuhtv of the note. If Fowler is an swcrable, individually, for surh abuse of the trust, we do not perceive the ground upon which the damages for which he may be so liable can be set off against the note in the hands of the assignee. These damages are altogether unliquidated, and there is no averment of the existence of any extrinsic matter which lays the foundotion for jurisdiction, on the part of the chancellor. Besides, to let in such a defence, would be to counteract the design of the parties, as fesled by the arrangement, throughout, which was to make the consideration passing from Fowler’s **s-signee, the consideration of the note. The by the contract of the parties, were legally and mor-allv hound to pay to tlie buna fide assignee of Fowler, and look to Sanders for remuneration. In this way, only, can such a loan of credit as this was, be effectually executed, so as to produce no mischief. If the note had been assigned to said company and their re-pleviri bond satisfied pro. tanto, it would never do to let the obligors escape upon the ground relied on. The note was m ide to Fowler, and authority given him to pass it to the company, or to sell it for the benefit Sanders, .and when Fowler did the very thing contemplated and no more, and when at the time of the transfer, Fowler had practised no fraud and been guilty no act prohibited by law, touching the transaction, it would be doing great injustice to the purchaser of the note to make him lose it. In such cases when the loss must fall on the purchaser or the obligor, equity should throw it on the latter, because it is their own fault, to put their notes in market for the benefit their friend. Bv so doing, the community is invited to advance money on tiieir credit, and when it is done the ch mceiior should not exonerate them from its payment.
Wherefore, upon all the grounds taken, we think the decree should he affirmed with costs.